On 31 July 1996 the Full Commission filed an Opinion and Award affirming the Deputy Commissioner's Opinion and Award and denying benefits to plaintiff. Upon plaintiffs appeal to the Court of Appeals, the court found that the Full Commission had failed to make sufficient findings of fact to support its conclusions of law and remanded this case for further consideration.
 ***********
The Full Commission has reviewed this matter based on the record of the proceedings before Deputy Commissioner Phillip A. Holmes, the decision filed by the Court of Appeals on 21 July 1997 and the briefs of the parties. Having reconsidered the entire record of evidence, the Full Commission modifies and affirms the prior Opinion and Award by the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 24 October 1995 as:
 STIPULATIONS
1. At the time of the alleged accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between defendant and plaintiff at all relevant times herein.
3. Defendant was a qualified self-insured employer at all relevant times herein.
4. Plaintiff's average weekly wage at the time of the alleged injury was $477.32.
5. Plaintiff was temporarily totally disabled as a result of a condition in his left knee from 26 July 1994 through 7 September 1994.
6. The medical records of Dr. Michael C. Fajgenbaum, Dr. Michael S. Comstock and Dr. Donald J. Zeller are stipulated into evidence.
7. The recorded statement of plaintiff, taken 27 July 1994, is stipulated into evidence.
8. An Industrial Commission Forin 19 is stipulated into evidence.
9. All other stipulations contained in the Pre-Trial Agreement are incorporated as if fully set forth herein.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the incident giving rise to this claim, plaintiff was employed as a paramedic with defendant's emergency medical services. Plaintiff was employed part time by defendant beginning in 1987 and has been employed full time since 1988. His primary duties are to provide care to patients in emergency circumstances and operate an ambulance for this purpose.
2. Plaintiff had not experienced any pain or other symptoms in his left knee prior to 23 July 1994.
3. At approximately 3:30 a.m. on Saturday 23 July 1994, plaintiff and his partner, paramedic Dwayne Smith, were awakened by an emergency call for a person who was severely bleeding at a local motel. They were at an EMS station in the Raleigh mini-city area. Plaintiff and Mr. Smith quickly dressed and left for the location with plaintiff driving the ambulance. When they arrived at the motel, Raleigh police and fire department vehicles were in the parking lot.
4. The parking lot was uneven, and plaintiff and his partner were operating an ambulance with a pick-up truck style chassis. This vehicle did not have a running board. Newer style ambulances now have a van-type chassis with a running board.
5. It was necessary for plaintiff to get out of the ambulance and turn to his left to obtain an oxygen cylinder from a compartment just behind the driver's door. Plaintiff extended his left leg to get out of the truck. Because of the particular style of the truck, plaintiffs left foot was still eight inches or so above the ground.
6. Plaintiff shifted his weight and dropped to the ground on his left leg. Then, while bringing his right leg out of the truck, he began pivoting on the left one in order to move towards the compartment behind him. During the course of plaintiffs movement towards the compartment he felt a popping and crunching sensation in his left knee. Plaintiff was able to complete work that day, but felt occasional clicks or pops in his left knee. Plaintiff told his partner of the difficulty he was having with his knee before they left work on 23 July 1994 at 8:00 a.m.
7. After plaintiff left work on 23 July 1994, he noted that his left knee was a little stiff and that there was a tendency for it to stiffen up after sitting for short periods.
8. By 24 July 1994, when plaintiff returned to work, his left knee was stiff and sore and he was limping by that afternoon. This was observed by his partner, Mr. Smith. Plaintiff s knee was swollen, painful and discolored by Monday afternoon and he, therefore, sought medical treatment at the Blue Ridge Family Practice. On 26 July 1994, plaintiff was treated at the Rex Hospital Emergency Room and was referred to Dr. Michael Fajgenbaum, a Raleigh Orthopedic surgeon.
9. On 26 July 1994, plaintiff formally reported his injury to Mr. Linwood Barham, the assistant director of defendant's emergency medical services. Mr. Barham completed the Industrial Commission Form 19 at this time based entirely on information provided to him by plaintiff. Mr. Barham did not verify plaintiff's story with independent sources prior to completing the form, which reported that plaintiff was injured by a "twisting motion."
10. Plaintiff was seen by Dr. Fajgenbaum and Dr. Michael Comstock who practices with Dr. Fajgenbaum, on 27 July 1994. Both doctors recommended arthroscopic surgery.
11. Plaintiff sustained a left knee medial meniscus tear and on 28 July 1994, underwent a left knee arthroscopy with partial lateral meniscectomy performed by Dr. Comstock.
12. After convalescing, plaintiff was seen by Dr. Comstock on 7 September 1994, when he was released to return to work with a permanent partial disability rating of five percent to his left leg.
13. Although Dr. Comstock did render an opinion that it was "not typical" for injuries such as plaintiff s medial meniscus tear to have been caused by "normal, everyday walking or activities," the Full Commission places little weight on this opinion as it relates to the compensability of plaintiffs claim. What duties are part of the normal working routine for one particular job may not be the same for another job. Dr. Comstock's opinion does not offer this level of necessary detail.
14. According to statements by plaintiff, the injury occurred during an emergency call on 24 July 1994 as he was getting out of the driver's side of the ambulance. After he had opened the driver's side door, plaintiff placed his left foot on the ground. Then, while completing his exit from the vehicle, plaintiff reports that he twisted his left knee and felt a popping sensation in his left knee.
15. In his recorded statement taken 27 July 1994, plaintiff notes that the motion involved while exiting his ambulance was a "normal motion," that he had not lost his balance and had not "violently twisted it or anything like that." Plaintiff also describes the incident as involving "just a normal motion."
16. At the time plaintiff injured his left knee, he was engaged in activities which were part of the usual and customary duties of his job as a paramedic, and were being performed in the usual and customary manner. Further, the incident which lead to plaintiff's knee injury was not an interruption of his normal work routine and did not result in the introduction thereby of unusual conditions likely to result in unexpected consequences.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show by the greater weight of the evidence that he sustained an injury by accident arising out of and in the course of his employment with defendant. His own statement was that he was performing his normal duties in a normal fashion when the injury occurred. G.S. § 97-2(6).
2. Plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. G.S. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ J. HOWARD BONN, JR. CHAIRMAN
S/ _____________ DIANNE C. SELLERS COMMISSIONER